LAWRANCE A. BOHM, ESQ. (SBN 208716)
BIANCA N. SMITH, ESQ (SBN 269963)
**BOHM LAW GROUP**
4600 Northgate Blvd., Suite 210
Sacramento, CA 95834
Telephone: (916) 927-5574
Facsimile: (916) 927-2046

Attorneys for Plaintiff
**TINA WHITE**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA WHITE,<br><br>            Plaintiff,<br><br>      v.<br><br>AUTOZONE, INC. and DOES 1-100, inclusive,<br><br>            Defendant. | Case No.<br><br>**PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES**<br><br>1) **Retaliation**<br>2) **Failure to Prevent Retaliation**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, TINA WHITE, respectfully submits the instant Verified Complaint for Damages and Demand for Jury Trial and alleges as follows:

**PARTIES AND JURISDICTION**

1. TINA WHITE (hereafter "WHITE"), was a recruit, employee, or wrongfully terminated employee of Defendant, AUTOZONE, INC., doing business as AUTOZONE (hereafter "AUTOZONE" or "Defendant").

2. Defendant AUTOZONE was at all times relevant to this action a business entity, form unknown, operating retail auto parts stores throughout California. AUTOZONE maintains its headquarters in Memphis, Tennessee and, on that basis, is believed to be a citizen of Tennessee. Defendant AUTOZONE was at all times relevant an employer as defined by Government Code §12926(d).

1

3. Plaintiffs and Defendant are of diverse citizenship. Plaintiffs seek damages in excess of $1,000,000. Jurisdiction in this court is predicated upon 28 U.S.C. sections 1332. Venue is proper because the events giving rise to this action took place in the Eastern District of California; because Defendants were doing business in the Eastern District of California; because Plaintiff worked for Defendant in the Eastern District of California; and because the majority of witnesses reside in the Eastern District of California.

4. At all times relevant, each and every Defendant was an agent and/or employee of each and every other Defendant. In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment, and was acting with the consent, permission and authorization of each remaining Defendant. All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents.

## STATEMENT OF FACTS

5. On or around February 24, 1999, Plaintiff, TINA WHITE, was hired by AUTOZONE as a Parts Sales Manager ("PSM"). Prior to her employment, WHITE was recruited by AUTOZONE District Manager, Joe Young while working for Grand Auto in Marysville, California. At Grand Auto, WHITE was a Store Manager. In accepting employment with AUTOZONE, WHITE took a step down in title and pay. WHITE reasoned that the move to AUTOZONE was a career investment in that AUTOZONE was a national company and provided benefits and retirement far better than those offered at Grand Auto.

6. During WHITE's time as PSM, District Manager ("DM") Randy Cosby was transferred into WHITE's market. Cosby served as a mentor to help in WHITE's advancement within AUTOZONE.

7. In or around June 1999, WHITE was promoted to Assistant Store Manager and transferred to the AUTOZONE store in Oroville, California.

///

8. In or around October 1999, WHITE was promoted to Store Manager by District Manager Randy Cosby who was now WHITE's direct supervisor. As Store Manager ("SM"), WHITE became a salaried employee. WHITE was transferred to an AUTOZONE store in Chico, California. The Chico store was one of two HUB Stores in Northern California at that time. As a HUB store, the Chico store was responsible for supplying all other AUTOZONE stores in the surrounding area with product and merchandise. HUB stores required knowledgeable and capable managers due to the sheer amount of inventory contained in one store.

9. WHITE continued her employment as Store Manager, receiving annual evaluations of either "Achieves Expectations" of "Exceeds Expectations".

10. In or around 2004, WHITE became the "go-to" manager when other managers needed help or had questions about running the stores. On a number of occasions, Cosby would send WHITE out to help other stores within the district if he was unable to.

11. In or around October 2005, WHITE was awarded the "Store Manager of the Year" award for the Sacramento Region. Candidates for Store Manager of the Year are nominated by their respective District Managers. Then, the Regional Management Team evaluates the candidates and ultimately selects one to receive said award. Her receipt of such a prestigious award, led to WHITE being urged by AUTOZONE upper management to apply for the position of Regional Training Manager ("RTM").

12. In or around January 2006, Randy Cosby went on medical leave for 28 days. During that time, AUTOZONE's Regional Management staff requested that WHITE cover Cosby's DM responsibilities on several occasions.

13. In or around April 2006, WHITE applied for the position of RTM. WHITE was interviewed for the position by Regional Human Resource Manager, Nicole McCollum. WHITE received the promotion to RTM, thus becoming a member of AUTOZONE's Regional

3

Management Team.  Her direct supervisor became Nicole McCollum.  WHITE truly felt that her career was becoming successful and she was pleased to be working for AUTOZONE.

14. As RTM, WHITE's responsibilities included hiring, coordinating AUTOZONE job fairs, and ensuring that AUTOZONE stores adhered to retaining an adept, knowledgeable and diverse staff.  In addition to quasi-Human Resources duties, WHITE also trained new Store Managers in basic AUTOZONE procedures and policy.

15. In or around September 2006, DM Randy Cosby was terminated.  Within a couple of weeks, WHITE was asked to help manage Cosby's old district while still fulfilling her duties as RTM.

16. In or around October 2006, Nicole McCollum left AUTOZONE, and Kathy Acosta-Smith became the new Regional HR Manager.

17. In or around December 2006, WHITE was promoted to DM.  Regional Manager. Mike Estes was WHITE's direct supervisor.

18. Tony Gasero was a SM within WHITE's district.  Gasero suffered from cardio vascular disease, and his medical restrictions required accommodation for shorter working days and allotted sitting time throughout the day.  Shortly after WHITE was promoted to DM, HR Managers began pressuring WHITE to "get rid of" Gasero because of his required accommodations.  Mike Estes also agreed that they needed to "get a new store manager in there who can work 50 hours a week."  WHITE refused to fire Gasero on the basis of his disability and AUTOZONE's unwillingness to accommodate him.  In fact, WHITE protested to HR Manager Kathy Acosta-Smith on Gasero's behalf, that terminating Gasero because of his disability would be unlawful and unfair.  Shortly after WHITE's refusal to fire Gasero, WHITE began receiving corrective actions, and was threatened to be placed on a Performance Improvement Plan ("PIP") at one point.  This was the first time WHITE had received negative performance feedback in her

4

Plaintiff's Complaint for Damages                                                                                     Lawrance A. Bohm, Esq.
WHITE v. AUTOZONE, INC., et al.                                                                                      Bianca N. Smith, Esq.

history with AUTOZONE.

19. In or around June 2007, WHITE was going through an extremely difficult divorce, and as a result, she moved to Hayward, California. WHITE's commute from Hayward to her district amounted to 6 hours per day.

20. In or around August 2007, WHITE received an annual performance evaluation of "Expectations Not Consistently Met" by Mike Estes. This was WHITE's first performance evaluation below either an "Achieves Expectations" or "Meets Expectations."

21. In or around December 2007, because of her commute, WHITE asked Mike Estes about the possibility of a transfer to the Bay Area. Estes told WHITE there were no available DM positions in the Bay Area at that time. WHITE indicated that she was willing to step down so long as she could be DM again once a position became available. Estes assured WHITE, "Sure, no problem. You will be first on the list."

22. In or around January 2008, WHITE was transferred to an AUTOZONE store in San Pablo, California where she was a SM. Joshua Hughes, the DM in the Bay Area, was now WHITE's immediate supervisor. Hughes' supervisor was Estes. The San Pablo store was in terrible condition and the morale of the crew was low. WHITE worked 15 hour days and weekends to try to get her store in shape, but no matter what WHITE did, Hughes was never satisfied with the progress that WHITE made. Hughes would often make comments to WHITE like, "What's the matter, Tina? I thought you were a superstar;" or "I thought you were a miracle worker."

23. Hughes made it extremely difficult for WHITE to manage her store effectively. When WHITE hired employees that increased the productivity of her store, Hughes routinely sent those employees to other AUTOZONE stores, claiming that those stores needed the help. On the other hand, when WHITE had problem employees, Hughes consistently prevented WHITE from

5

disciplining them. One particular Commercial Specialist in WHITE's store rarely showed up to work her scheduled shifts. When WHITE filled out a Corrective Action for the employee's repeated absences, Hughes ripped it up and told WHITE to "just leave her alone." This incident was only one of many in which Hughes undermined WHITE's managerial decisions. WHITE felt that Hughes was intentionally sabotaging the improvement of her store by transferring out her top-performing employees, only to leave her with the weakest performers.

24.  In or around June 2008, WHITE wrote a letter and personally delivered it to Mike Estes, detailing the problems that she had been having with Hughes. Estes never discussed the letter with WHITE. Approximately 10 days later, the Regional HR Manager at the time (name unknown) came into WHITE's store and then exited with Joshua Hughes. When the HR Manager and Hughes returned a couple of hours later, WHITE saw Hughes holding the very same letter that she had recently given to Estes. WHITE was pulled into the back office and told by the HR Manager to "Shut up and stop being such a baby. Just do your job."

25.  Hughes became increasingly dissatisfied with WHITE's performance and placed WHITE on an intensive PIP, with exceedingly high standards which WHITE knew would be nearly impossible to meet. WHITE felt that Hughes was intentionally setting her up for failure. Still not satisfied with her progress, Hughes said to WHITE, "I can either fire you, or you can voluntarily step down to another position." WHITE felt like she had no choice but to take the demotion.

26.  On or about September 14, 2008, WHITE was demoted to "Hub Specialist" and transferred to an AUTOZONE store in Oakland, California.

///

///

///

6

27. During the time WHITE was in the Bay Area Region, contrary to what Estes had promised, she was never notified of any available DM positions. WHITE eventually learned that multiple male employees, with less experience and knowledge, had been promoted to DM positions.

28. During her time in the Bay Area, WHITE attempted to contact Estes on numerous occasions with no reply.

29. On or about March 29, 2009, given the circumstances described above, and Mike Estes' failure to address WHITE's frustrations, WHITE felt she had no choice but to resign from AUTOZONE.

30. After her resignation, Plaintiff filed a charge of retaliation, with the California Department of Fair Employment and Housing. Plaintiff received a notice of her right to sue on March 4, 2010 advising her of her right to sue within one year.

## FIRST CAUSE OF ACTION

### (Retaliation; Government Code §12940(h))

31. The allegations set forth in the paragraphs above are hereby re-alleged and incorporated by reference.

32. At all times relevant to this matter, Plaintiff engaged in protected activities as defined by Government Code §12940(h) and Title 2 of the California Code of Regulations §7287.8(a). Specifically, Plaintiff opposed and reported unlawful discrimination based upon disability.

33. Defendant subjected plaintiff to adverse employment actions including negative performance reviews, demotion, and a failure to promote. Plaintiff's protected activities were a motivating factor for all adverse actions. Defendant's behavior is particularly peculiar in light of Plaintiff's historically exceptional performance, management position and long tenure with the company. Accordingly, Defendants' conduct violated Government Code §12940(h) and Title 2 of the California Code of Regulations §7287.8.

7

34. As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government Code §12926(a).

## SECOND CAUSE OF ACTION

**(Failure to Prevent Retaliation; Government Code §12940(k).)**

35. All factual allegations are re-alleged and incorporated herein by reference.

36. Defendants knew or should have known about the unlawful retaliation of Plaintiff set forth above. Defendants failed to implement adequate training, policies or instructions that would have prevented the aforementioned retaliation. Defendant breached its duty to prevent the retaliation of Plaintiff. Accordingly, Defendant violated Government Code §12940(k) and Title 2 of the California Code of Regulations §7287.6(b) (3).

37. As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government Code §12926(a).

38. As a proximate result of Defendant's willful and intentional retaliation, Plaintiff has lost wages, benefits, and other out of pocket expenses.

39. As a proximate result of the aforementioned acts of Defendant, Plaintiff has become mentally upset, distressed, and aggravated. Plaintiff claims general damages for mental and emotional distress in an amount according to proof at time of trial.

///
///
///
///
///
///
///

Plaintiff's Complaint for Damages  
WHITE v. AUTOZONE, INC., et al.  
Lawrance A. Bohm, Esq.  
Bianca N. Smith, Esq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants and any other defendants who may be later added to this action as follows:

1. For compensatory damages, including, but not limited to lost wages and emotional distress in the amount according to proof;

2. For attorneys' fees and costs pursuant to all applicable statues or legal principles;

3. For cost of suit incurred;

4. For punitive damages or other penalties recoverable by law;

5. For prejudgment interest on all amounts claimed pursuant to Civil Code section 3287 and/or 3288; and

6. For such other and further relief as the court may deem proper.

Dated: March 4, 2010         By: /s/ Lawrance A. Bohm
                                 LAWRANCE A. BOHM, ESQ.
                                 BIANCA N. SMITH, ESQ.
                                 Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for this matter.

Dated: March 4, 2011         By: /s/ Lawrance A. Bohm
                                 LAWRANCE A. BOHM, ESQ.
                                 BIANCA N. SMITH, ESQ.
                                 Attorney for Plaintiffs

## VERIFICATION OF COMPLAINT FOR DAMAGES

I, Tina White, have read the attached Complaint for Damages and hereby attest to the truth of all matters asserted therein except for those alleged on information and belief.

I declare under penalty of perjury, pursuant to the laws of the State of California that the foregoing is true and correct to the best of my personal knowledge.

_____3/4/11_____  _____[signature]_____
Date        Tina White